IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DENNIS J. BROOKS, )
    Plaintiff, )
)
v. ) Civil Action No. 97-2083
)
AMERICAN CENTENNIAL INSURANCE )
COMPANY, )
    Defendant. )

MEMORANDUM

Gary L. Lancaster,
District Judge.                                     August 26, 2005

    This is an action under Pennsylvania's "Direct Action" statute. Plaintiff, Dennis Brooks, seeks to recover $4 million of a $6 million personal injury judgment under an excess insurance policy issued by defendant, American Centennial Insurance Company, to Eazor Express, Inc., plaintiff's former employer. Before the court are reinstated motions by plaintiff to exclude evidence [doc. nos. 42, 55; doc. no. 69, p. 17]. In these motions, plaintiff claims that defendant's 30(b)(6) witness's testimony should be excluded due to her incompetency to testify, and that defendant should not be permitted to substitute newly discovered evidence, submitted years after the close of discovery, to cure the defects in her testimony.

For the reasons that follow, the motion to exclude the testimony of defendant's 30(b)(6) witness will be denied. The motion to exclude the newly discovered evidence will be granted, in part, and denied, in part.

I.   BACKGROUND

This case has a protracted procedural history. Plaintiff was injured in a workplace accident in 1981. In 1983 he filed suit in state court to recover against his employer, Eazor and another party, Gould. Gould was dismissed from the case on the eve of trial and Eazor did not defend the suit because it was in the midst of bankruptcy. As a result, in 1993, plaintiff obtained an uncontested judgement of almost $6 million against Eazor. Plaintiff's recovery would come from Eazor's insurers. Defendant's policy provided $4 million of coverage in excess of $1 million. Apparently, plaintiff has received some payment on the judgment from insurance carriers with coverage below that of defendant's. However, defendant refuses to pay plaintiff, contending that it has no obligation to pay under its excess policy because it did not receive timely notice of plaintiff's claim. Therefore, plaintiff filed this suit against defendant in order to compel coverage under the $4 million excess insurance policy.

During discovery, defendant produced Luann Petrellis as its 30(b)(6) witness. At her corporate deposition, Ms. Petrellis testified to several important things, without qualification, or objection from her counsel.[1]  First, she testified that there were no agents authorized to accept notice of claims on defendant's behalf, even though the insurance policy stated that notice could be provided to defendant or any of its "authorized agents." Petrellis Depo. [doc. no. 43, Ex. B] at pp. 24-25, 38, 102-03. This has turned out to be false - TUI, defendant's underwriter and managing general agent, was authorized to accept notice of claims on defendant's behalf. Second, she acknowledged that documents related to defendant's relationship with TUI had been requested by plaintiff in discovery, searched for, and produced. Id. at pp. 18-19, 63-65, 85-86, 98, 99, 101. This has turned out to be false - defendant has now located additional TUI documents and produced them years after the close of discovery. Finally, she admitted that she did not have direct knowledge of how defendant dealt with underlying carriers when it was issuing excess policies because defendant had stopped issuing such

---

[1] Counsel objected on only one occasion on the ground that questions were outside the scope of the notice of deposition. The topic being discussed was how a typical underwriting file would be created and maintained. Counsel objected on the ground that the 30(b)(6) notice did not include a request for "somebody who is an expert in underwriting." Petrellis Depo. [doc. no. 43, Ex. B] at p. 100.

policies seven years before she began working for defendant. Id. at pp. 16, 20; Brooks v. American Centennial Insur. Co., 327 F.3d 260, 266 (3d Cir. 2003). Ms. Petrellis has now explained that she gained her knowledge on these issues from reviewing defendant's old files and supervising the run off of excess claims being processed in her department after she joined the company in 1992.

In November of 2000, Judge Lee granted defendant's motion for summary judgment [doc. no. 38]. He found that there was no evidence that defendant had received notice of plaintiff's claim prior to 1996, after the state court judgment was final. He determined that notice in 1996 was late. And finally, he found that defendant was prejudiced by this late notice, because, among other things, it could not participate in the defense of the state court case, or appeal the judgment. Because defendant received notice late, and was prejudiced as a result, Judge Lee found that defendant had no duty to pay under the policy.[2]

Plaintiff appealed Judge Lee's decision. In an opinion issued in May of 2003, the Court of Appeals for the Third Circuit reversed, and remanded. While the Court of Appeals agreed that

---

[2] Under Pennsylvania law, when asserting a defense of late notice, an insurance company must prove that the notice provision of the policy was breached and that the breach resulted in prejudice. Brakeman v. Potomac Insur. Co., 371 A.2d 193, 198 (Pa. 1977).

defendant was prejudiced if, in fact, it did not receive notice until 1996, it found that "the District Court erred in holding, on summary judgment, that [defendant] did not receive timely notice of [plaintiff's] claim." Brooks v. American Centennial Insur. Co., 327 F.3d 260, 262 (3d Cir. 2003). In particular, the Court of Appeals set aside the grant of summary judgment because defendant's evidence was insufficient to rule out the possibility that defendant "may have received notice of [plaintiff's] claim through TUI" or from some other "authorized agent". Id. at 267. The Court of Appeals stated that the question of whether defendant received timely notice was "best left to the trier of fact." Id. at 268. The case was remanded for further proceedings, to include an in limine hearing to determine defendant's 30(b)(6) witness's competency to testify on issues relating to excess insurance policies, and other matters about which she had no personal knowledge because they occurred prior to the time that she began working for defendant. Id.

Upon remand, plaintiff filed a "motion in limine to exclude evidence of lack of notice, and for summary judgment" arguing that Ms. Petrellis's testimony was inadmissible because she lacked personal knowledge, and that defendant had no other evidence on the issue of notice with which to sustain its burden of proof at trial under Brakeman v. Potomac Insur. Co., 371 A.2d

5

193, 198 (Pa. 1977) [doc. no. 42]. When defendant filed its opposition to this motion in October of 2003, it submitted additional evidence on the issue of notice, much of which had not been previously produced in discovery, claiming that the Court of Appeals had directed it to "supplement the record" on remand.

Among other things, the evidence included documents and affidavits regarding defendant's relationship with TUI [doc. nos. 50, 51]. For example, the evidence included defendant's contracts with TUI, and an affidavit from a former employee who was knowledgeable about the TUI relationship [see doc. no. 50, Ex. 7 (and attachments); doc. no. 51, Exs. 14-16, 27 (and attachments)]. It also included defendant's claims manual, a TUI claims run, and a TUI memorandum [see doc. no. 50, Ex. 7 (attachments A, E, G); doc. no. 51, Ex. 13; see also doc. no. 56, at p. 6]. This evidence established that TUI could, and did, provide notice of claims to defendant; in direct contradiction to Ms. Petrellis's prior deposition testimony. This evidence also established that all of the documents related to TUI's relationship with defendant were not searched for and produced in discovery; in direct contradiction to Ms. Petrellis's prior deposition testimony. The evidence also included affidavits and documents from defendant's broker, Will Darrah and Associates, a co-insurer, General Star Management/North Star, and Eazor's

former personal injury counsel, Mr. Elder, indicating that none of them ever gave notice of plaintiff's claim to defendant.

Plaintiff filed a motion to exclude this evidence to the extent it was not previously produced in discovery or contradicted defendant's 30(b)(6) witness's prior deposition testimony [doc. nos. 55, 56]. Plaintiff's evidentiary motions were denied, without prejudice [doc. no. 60]. Plaintiff's summary judgment motion was denied as untimely [doc. no. 60]. At a subsequent status conference with the court, the parties reiterated the importance of determining the competency of defendant's 30(b)(6) witness, and the admissibility of defendant's evidence prior to proceeding to trial [doc. no. 69, at p. 17]. The court agreed to review the record, and address any appropriate issues.

II.     LEGAL STANDARD

   A.    Competency to Testify

A witness is competent to testify as to any matter on which she has personal knowledge. Fed. R. Evid. 602. However, in the case of a 30(b)(6) witness, a corporation can choose to prepare a particular witness who may not have personal knowledge of all designated subjects to testify on its behalf. Fed. R. Civ. P. 30(b)(6); Ierardi v. Lorillard, Inc., 1991 WL 158911, *1, *3

(E.D. Pa. Aug. 13, 1991) (citing cases). Therefore, a 30(b)(6) witness may be provided with knowledge that is "reasonably available" to the corporation. Under those circumstances, the fact that the 30(b)(6) witness does not have independent, personal knowledge on a topic does not disqualify her from testifying on behalf of the corporation.

In fact, a corporation has a duty to prepare a witness for a 30(b)(6) deposition. A corporation may not avoid its obligation under the rule by simply stating that it no longer has employees with the relevant knowledge. It must demonstrate that it has no ability to sufficiently familiarize a designee with the issues listed in the notice of deposition. See Kanaji v. Philadelphia Child Guidance Center, 2001 WL 708898 (E.D. Pa. June 20, 2001).

When a 30(b)(6) witness speaks on issues for which she has been designated by the corporation, her answers bind the corporation. However, a 30(b)(6) deposition is just one piece of evidence in a case, which, like other evidence, can be contradicted and impeached. See A.I. Credit Corp. v. Legion Insur. Co., 265 F.3d 630, 637 (7th Cir. 2001). Testimony of a 30(b)(6) witness is not tantamount to a judicial admission. See United States v. Taylor, 166 F.R.D. 356, 362 n.6 (M.D. N.C. 1996).

B. Discovery Sanctions

In considering whether the exclusion of evidence is an appropriate sanction for failure to comply with discovery duties, we must consider four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation. Nicholas v. Pennsylvania State University, 227 F.3d 133, 148 (3d Cir. 2000) (citing Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997)). This fourth factor is particularly important where the exclusion of critical evidence is being considered. Meyers v. Pennypack Woods Home Ownsership Ass'n, 559 F.2d 894, 904 (3d Cir. 1977).

III. DISCUSSION

Plaintiff seeks to exclude two types of evidence. First, plaintiff seeks to exclude defendant's 30(b)(6) witness's testimony because she is incompetent to testify [see doc. no. 42]. Second, plaintiff seeks to exclude all affidavits, documents, witnesses, or other evidence that were attached to

9

defendant's opposition brief in October 2003 to the extent that they were not previously produced in discovery and/or contradict defendant's prior deposition testimony [see doc. nos. 55, 56].

### A. Competency of 30(b)(6) Witness

Defendant designated Luann Petrellis as its 30(b)(6) witness. Ms. Petrellis began working for defendant in 1992, approximately seven years after defendant had stopped issuing excess insurance policies. At her 30(b)(6) deposition, Ms. Petrellis indicated that her knowledge on several fundamental issues related to excess insurance policies and procedures was scant, or non-existent. This led the Court of Appeals to direct this court to determine her competency to testify on issues related to how defendant dealt with excess insurance policies. Brooks, 327 F.3d at 268. To reiterate, the policy at issue in this case is an excess insurance policy.

Of course, as a corporate designee, Ms. Petrellis can testify to things about which she may not have personal knowledge, but about which she has been made knowledgeable by the corporation. In her October 2003 affidavit, Ms. Petrellis has explained that her knowledge of how defendant dealt with excess insurance policies comes from her supervision of the claims department while it was in run off of its excess policies, and

from her review of excess policy files [doc. no. 51, Ex. 27]. Ms. Petrellis is qualified to testify as to the work that she has supervised while employed by defendant, as well as her general insurance industry experience. She can also testify as to what she has seen in defendant's files. If, at trial, it appears that Ms. Petrellis is speaking to issues on which she has no knowledge, the court will address that particular issue upon a proper oral motion. However, based on Ms. Petrellis's industry experience, supervision of defendant's excess claims run off, and review of defendant's excess policy files, we cannot say that she is an incompetent witness who could not give testimony at trial. Of course, plaintiff will be free to cross examine and impeach the witness on any permissible ground, including lack of knowledge.

### B. Exclusion of Newly Discovered Evidence as a Discovery Sanction

Plaintiff seeks to exclude evidence that defendant submitted to the court with its opposition brief in October of 2003. Plaintiff claims that this sanction is appropriate because defendant failed to produce this evidence in discovery and because the evidence contradicts prior 30(b)(6) deposition testimony. As an initial matter, we find that it would be improper to exclude the evidence solely on the ground that it

contradicts Ms. Petrellis's 30(b)(6) testimony. As discussed above, Ms. Petrellis's deposition testimony is just one piece of evidence in the case, that is free to be contradicted, impeached, or further explained through other evidence.[3]

The real question is whether defendant should be sanctioned with the exclusion of evidence for failing to produce the evidence submitted with its October 2003 filing in discovery. As set forth above, we must apply a four part test to determine whether it is appropriate to exclude evidence as a discovery sanction. However, before we do so, we must first determine whether defendant has breached its discovery duty in the first place.

We are not convinced that the bulk of the evidence submitted with defendant's October 2003 brief was wrongfully withheld in discovery. The affidavits from Mr. Davis of Darrah, Mr. Carroll of North Star, and Mr. Elder of Eazor's former law firm simply reflect a summary of defendant's trial evidence [see doc. no. 51, Exs. 9, 21, 22]. Plaintiff presumably was aware of the existence of these entities, and could have conducted discovery of them. Plaintiff has not directed the court to any outstanding discovery request that required the provision of this

---

[3] For much the same reason, we do not find that the doctrine of judicial estoppel applies.

12

specific evidence in discovery. The same is generally true of the Rosenbaum affidavit, which summarizes how defendant came into possession of the TUI documents [see doc. no. 51, Ex. 18]. We do not see how defendant breached its discovery duties by failing to produce this evidence in discovery.[4]

However, we reach the opposite conclusion as to the remainder of this evidence.[5] During discovery, defendant acknowledged that it had a duty to produce all TUI documents related to the Eazor account. During discovery defendant contended that all TUI documents that still existed[6] had been produced. We now know that additional TUI documents existed, but were not produced [see doc. no. 50, Ex. 7 (and attachments B-G); doc. no. 51, Exs. 13-16, attachments A, B, and C to Ex. 27]. When faced with the accusation that it wrongfully withheld evidence in discovery, defendant claims that the TUI documents were not requested in discovery, and need not have been produced.

---

[4] Much of the remaining evidence attached to defendant's response was produced in discovery, or consisted of public documents [see doc. no. 50, Exs. 1-6; doc. no. 51, Exs. 8, 10-12, 17, 19-20, 23-26, 28].

[5] This evidence includes the Furlong affidavit, with attachments (doc. no. 50, Ex. 7), and the TUI memorandum and contracts (doc. no. 51, Exs. 13-16 and attachments A, B, and C to Ex. 27) (hereinafter the "withheld evidence").

[6] TUI had gone out of business before this lawsuit was filed.

Defendant has breached its discovery duty as to this evidence, and therefore, we must apply the four factor test to determine whether it would be excluded.

In addition, we must also apply the four factor test to the proposed testimony of Mr. Furlong. To be clear, we do so not because his testimony contradicts Ms. Petrellis's. We do so because his testimony reveals that defendant did not adequately prepare its 30(b)(6) witness. It is apparent that defendant did not impart Ms. Petrellis with all available knowledge regarding notice, the relationship with TUI, or general claims processing procedures, as it was required to do in order to respond to plaintiff's notice of deposition [see doc. no. 43, Ex. B at ¶¶2, 4; doc. no. 50, attachment A to Ex. 7]. Therefore, defendant has breached its discovery duty to adequately prepare its 30(b)(6) designee. And that is why we must apply the four factor test to Mr. Furlong's testimony to determine whether this evidence should be excluded as a discovery sanction.

1. <u>Prejudice to Plaintiff</u>

This case will turn on the answer to one question: When did defendant receive notice of plaintiff's claim? Because late notice is a defense asserted by defendant, defendant has the burden of proving that it received notice late, and was

prejudiced as a result.[7] Defendant claims that it did not receive notice until 1996, after plaintiff secured the $6 million state court judgment. Plaintiff contends that defendant cannot carry its burden of proof to establish that 1996 was the first time that it received notice of plaintiff's claim.

The withheld evidence goes to the issue of notice. The evidence demonstrates that TUI would routinely receive notice of a claim on defendant's behalf. The discovery period is closed, and has been for approximately five years. Plaintiff has been deprived of its ability to investigate, follow up on, challenge, and counter this evidence on the critical issue of notice through discovery. There is no doubt that plaintiff would suffer prejudice if the withheld evidence were admitted.

### 2. Ability to Cure Prejudice

Next, we must determine whether plaintiff would be able to cure any prejudice against it if the withheld evidence were admitted. We find that plaintiff has no ability to cure the prejudice under the current circumstances. Discovery has closed. Pre-trial statements have been filed. Pending resolution of

---

[7] If, in fact, defendant did not receive notice until 1996, the Court of Appeals for the Third Circuit has already confirmed that such notice was late and that defendant was prejudiced under the circumstances.

15

these reinstated motions, this matter will be scheduled for trial in the next several months. Under such a schedule, there is no way for plaintiff to cure the prejudice caused by admitting this evidence.

Of course, were the court to re-open the discovery period much of the prejudice could be cured. However, the court does not favor re-opening discovery, which closed five years ago, in a case filed with this court in 1997, based solely on the fact that defendant took it upon itself to submit new evidence in response to a summary judgment motion that plaintiff took it upon itself to file after the deadline for such motions had long passed. Because we will not re-open discovery under the circumstances, there is no practical way to cure the prejudice to plaintiff of admitted the withheld evidence.

### 3. Disruption of Trial

Next we must determine whether allowing the withheld evidence to be admitted would disrupt the trial of this case, and others. If the court were to admit the evidence, and re-open the discovery period, the trial schedule would be greatly disrupted. In essence, the parties would be starting the case from scratch, this time with numerous key documents and witnesses bearing on the central issue in the case available for investigation.

Trial, in a case filed with this court in 1997, and stemming from a personal injury case that was filed in 1983, would be significantly delayed.

If we were to admit the evidence, but not re-open the discovery period, trial could proceed as scheduled. However, presumably, plaintiff's presentation of the case before the court would be lengthened, with plaintiff forced to conduct "discovery" of this evidence while in the courtroom or to present additional witnesses to counter it.

We find that admitting the evidence, either with, or without, re-opening the discovery period, would disrupt the trial of this matter, and in turn, disrupt the remainder of this court's trial schedule.

4. Bad Faith or Wilfulness

Finally, we must assess defendant's bad faith or wilfulness in failing to fulfill its discovery obligations. At one time, defendant acknowledged that the TUI documents should have been produced in discovery. Now, defendant claims that it never had a duty to produce this evidence. At one time defendant presented Ms. Petrellis as its most knowledgeable witness on the issues of who could receive notice on defendant's behalf and how claims were processed. Now, it has produced testimony by affidavit from

Mr. Furlong who obviously has a much greater knowledge base than Ms. Petrellis on the relevant issues.[8]

Therefore, we are faced with a party that hid evidence during the discovery period, either purposefully, or by initially conducting inadequate investigations in order to respond to discovery requests. If defendant is guilty of the former, there is no question that bad faith and wilfulness have been shown. If defendant committed the latter infraction, we must assess the matter further.

Under the scenario advanced by plaintiff, defendant did a poor job of looking for documents and witnesses during discovery, but when notified of the weaknesses in its case by the Court of Appeals, decided to go back, do an adequate investigation, and locate evidence sufficient to support its defense of lack of notice. In response, defendant contends that the evidence was not requested by plaintiff in discovery.

Defendant has offered no other explanation as to why this evidence was not previously produced. Therefore, we must determine whether defendant's claim that it had no duty to

---

[8] In addition, we reiterate that it was improper for defendant to submit the withheld evidence on remand, years after the discovery period had closed, without leave of court, or agreement of counsel. Contrary to defendant's assertions, we see nothing in the Court of Appeals's opinion requiring, or inviting, defendant to "supplement the record" upon remand.

produce the withheld evidence in discovery was made in bad faith. We find that it was.

Defendant previously admitted that the evidence was requested in discovery. Petrellis Depo. at pp. 18-19, 63-65, 85-86, 98, 99, 101. It also had an affirmative duty to familiarize its 30(b)(6) designee with all knowledge available to the corporation regarding the topics listed in the notice of deposition. It allowed Ms. Petrellis to give answers (albeit wrong ones) on those topics. It never objected to her testimony on these matters as being outside the scope of the deposition notice. Defendant's claim that the evidence that it has now submitted was simply outside the scope of any discovery request is not one made in good faith.

IV.   CONCLUSION

Ms. Petrellis will be permitted to testify at trial. Plaintiff's motion to exclude her testimony [doc. no. 42] is denied. Plaintiff's motion to exclude evidence [doc. no. 55] is granted, in part, and denied, in part. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DENNIS J. BROOKS, )
    Plaintiff, )
)
v. ) Civil Action No. 97-2083
)
AMERICAN CENTENNIAL INSURANCE )
COMPANY, )
    Defendant. )

### ORDER

AND NOW, this 26th day of August, 2005, IT IS HEREBY ORDERED that plaintiff's motion *in limine* to exclude evidence of lack of notice [doc. no. 42] is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion to strike and exclude evidence [doc. no. 55] is GRANTED, IN PART, and DENIED, IN PART. Defendant will be barred from offering the testimony of Mr. Furlong at trial. Defendant will also be barred from offering the following evidence at trial:

    Doc. 50 - Attachments to Ex. 7;

    Doc. 51 - Exs. 13-16;

    Doc. 51 - Attachments A, B, and C to Ex. 27.

BY THE COURT,

[signature] J.

cc: All Counsel of Record